LITTLE ROCK NEWSPAPERS, INC. *v.*
Louis Art DODRILL

83-101                                          660 S.W.2d 933

Supreme Court of Arkansas
Opinion delivered November 21, 1983
[Rehearing denied December 19, 1983.]

*Wright, Lindsey & Jennings,* for appellant.

*R. David Lewis,* for appellee.

STEELE HAYS, Justice. This is a defamation action brought by Louis Art Dodrill, appellee, against Little Rock Newspapers, appellant, arising. out of two newspaper

articles that appeared in the Arkansas Democrat in 1976. This case has been before this court previously. In 1975, Dodrill was suspended from the practice of law for one year for unethical conduct and was required to retake the bar examination as a condition for readmittance to the bar. He took the bar exam in August 1976. Following a long-standing practice, a list of examinees who had passed the bar was published in two major Little Rock newspapers after the exam, and Dodrill's name was not on the list. Normally such an absence would indicate a failure of the exam, but in this case, Dodrill had passed but his name was withheld pending further investigation concerning his readmission to the bar by the Board of Bar Examiners. It was not known until some months later that Dodrill had in fact passed the exam.

The first of the two articles in question came out immediately after the list had appeared and was headlined, "Suspended Little Rock Lawyer Fails Bar Examination." The article noted that Dodrill had previously been suspended and then stated that he had failed the bar exam. The second article appeared a few days later and concerned a suit that Dodrill had filed against the Bar Examiners to compel them to report his score on the exam. There were two items that Dodrill alleged were libelous, both intimating ineptness or laxness on Dodrill's part in pursing his own legal remedies. Dodrill then filed a complaint seeking damages against the Arkansas Democrat for libel.

In *Dodrill* v. *Arkansas Democrat Co.,* 265 Ark. 268, 590 S.W.2d 840 (1979) we heard an appeal of that case from the trial court order sustaining a motion for summary judgment which dismissed Dodrill's complaint for damages. The trial court had determined that Dodrill was a public figure and applying the standard required under *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), that he had failed to demonstrate actual malice on the part of the Arkansas Democrat. After reviewing the facts of the case and the applicable United States Supreme Court decisions, we reversed and remanded, finding that Dodrill was not a public figure. For guidance of the trial court in further proceedings, we indicated that the negligence standard

should measure the publisher's liability in the case of a private individual. The case was tried and a verdict returned in favor of Dodrill. The jury found the newspaper negligent and awarded Dodrill $40,000 in damages for mental suffering.

There are several issues raised by the appellant, but only one which we find has merit and which is pivotal in the determination of this case. The newspaper argues for reversal that there was no substantial evidence of damage to reputation and absent such a showing, a plaintiff in a defamation suit cannot recover damages for mental suffering alone. We sustain the argument.

It is settled law that damage to reputation is the essence of libel[1] and protection of the reputation is the fundamental concept of the law of defamation. The action turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. 50 Am.Jur.2d *Libel and Slander* §§ 1, 357; Restatement (Second) of Torts § 559; and see generally *Defamation, Privacy, and the First Amendment,* Duke L.J. 1976:1016. Such injury to the reputation is a prerequisite to making out a case of defamation and an action lacking that claim becomes another cause of action. Prosser states:

> . . . [D]efamation is an invasion of the interest in reputation and good name. This is a 'relational' interest, since it involves the opinion which others in the community may have, or tend to have, of the plaintiff. Consequently, defamation requires that something be communicated to a third person that may affect that opinion. Derogatory words and insults directed to the plaintiff himself may afford ground for an action for the intentional infliction of mental suffering, but unless they are communicated to another the action cannot be one for defamation, no matter how harrowing they may be to the feelings. Defamation is not concerned with the plaintiff's own humiliation, wrath or sorrow except as an element of 'parasitic'

---

[1]*Monitor Patriot Co.* v. *Roy,* 401 U.S. 265, 275 (1975).

damages attached to an independent cause of action. Prosser, *Handbook of the Law of Torts* (4th ed. 1971) § 111.[2]

An action for defamation has always required this concept of reputational injury and recovery for mental suffering alone has not been allowed. 53 C.J.S. *Libel and Slander*, § 243. At common law, publications that were actionable per se always presumed damage to reputation as well as other injuries, including mental suffering. *Reese* v. *Haywood*, 235 Ark. 442, 360 S.W.2d 448 (1962); Prosser, *supra*, § 112. While recovery was allowed in some jurisdictions for mental suffering alone, this was clearly allowed only when the publication was actionable per se. 50 Am.Jur.2d § 358; 90 ALR 1175, 1182-83, 1200-02. Recovery was allowed in such cases only then because damage to reputation, which was essential to recovery, was always presumed. If the publication was not actionable per se, recovery for mental suffering alone was not allowed because of this absence of presumption of damage to reputation.[3] An early case discusses this distinction in recoveries and explains:

The action for slander is given by the law as a remedy for injuries affecting a man's reputation or good name

---

[2]And see also, *Defamation, Privacy and the First Amendment*, Duke L.J., 1976:1016.

[3]For further clarification of the sometimes elusive relationship of reputational injury and mental suffering we quote the following:

At common law, mental suffering was viewed not as a separate component of damages, but as an integral part of the general damages presumed from the defamation. Wigmore in his famous treatise on evidence states that 'the injury to feelings which the law of defamation recognizes is not the suffering from the making of the charge, but is that suffering which is caused by other people's conduct towards [the plaintiff] in consequence of it.' Thus, the emotional damage is really a reflection of the harm done externally: the plaintiff may think differently of himself as a result of the defamatory utterance. He may suffer harm to dignity, pride and self-esteem. It will be recalled that the common law did not distinguish between defamation which actually harmed reputation and defamation which tended to harm reputation. It follows that the mental suffering element of defamation arises from a fear that others might

by malicious, scandalous, and slanderous words. It is injuries affecting the reputation only which are the subject of the action. In the case of slanderous words actionable per se, the law, from their natural and immediate tendency to produce injury, adjudges them to be injurious, though no special loss or damage can be proved. But with regard to words that do not apparently and upon the face of them import such defamation as will of course be injurious, it is necessary that the plaintiff should aver some particular damages to have happened. . . . There must be some limit to liability for words not actionable per se, both as to the words and the kind of damages. . . . *Terwilliger* v. *Wands,* 17 N.Y. 54, 72 Am. Dec. 420 (1858).

Even words that were not actionable per se which required proof of special harm, presumed damage to reputation once that showing was made. Restatement (Second) of Torts § 575; Prosser, *supra* § 112. That the reputational interest has always been at the heart of any defamation suit is further evidenced by the fact that the defendant has always been allowed to introduce evidence of the plaintiff's bad reputation to mitigate damages. *Simonson* v. *Lovewell,* 118 Ark. 81, 175 S.W. 407 (1915); *McDonald* v. *Louthen,* 136 Ark. 368, 206 S.W. 674 (1918); 50 Am.Jur.2d § 381, Prosser, *supra* § 116.

One of the underlying principles of these common law theories of recovery was drastically altered with the United States Supreme Court decision in *Gertz* v. *Robert Welch,* 418 U.S. 323 (1974). With *Gertz,* a change has been worked, at least as against media defendants, on all actions which

---

behave differently toward the defamed person rather than from the certainty that they in fact do behave differently.

It is difficult to imagine, however, why a plaintiff may think differently of himself when others do not think differently of him. Since the common law presumed harm from defamatory falsehoods, this inconsistency was never manifest. . . . [The question is raised] whether mental injuries unrelated to actual harm to reputation should be compensated for in a defamation action. Mental injuries in such a case seem to arise from publicity and not from the altered conduct of third persons. Thus, an action in privacy appears to be more appropriate. *Defamation, Privacy and the First Amendment,* Duke L.J. 1976:1016.

formerly presumed damages upon establishing defamation per se. No longer may any damages be recovered, absent a showing of actual malice, unless there is proof of some actual injury. Therefore, it follows that damage to reputation cannot be presumed in any case. We do not find, however, that this decision requires a change in the traditional requirement of the reputational element in defamation actions.

The stated purpose in *Gertz* for the presumption limitation is to prevent the giving of "gratuitous awards of money damages far in excess of any actual injury." *Gertz* at 349. The Court states:

> The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact.

The spirit of the *Gertz* decision on this point is clearly one to protect First Amendment rights from unjustifiable and unsubstantiated intrusions. To allow recovery in a defamation action where the primary element of the cause of action is missing not only sets the law of defamation on end, but also substantially undercuts the impact *Gertz* seeks to effect. The law of defamation has always attempted to balance the tension between the individual's right to protect his reputation and the right of free speech. To totally change the character of defamation to allow recovery when there has been no loss of the former right, would be an unjustified infringement on the First Amendment.

While *Gertz* suggests, and *Time, Inc.* v. *Firestone*, 424 U.S. 448 (1976) confirms, that the Constitution does not require proof of damages to reputation before recovery for mental suffering can be had, neither does *Firestone* indicate that such an approach is favored. Indeed, the *Firestone*

decision has been strongly criticized[4] and the opposite approach has been taken in subsequent decisions in other states. See *Gobin* v. *Globe Publ. Co.*, 232 Kan. 1, 649 P.2d 1239 (1982); *France* v. *St. Clare's Hospital and Health Center*, 82 App.Div.2d 1, 441 N.Y.S.2d 79 (1981). We can find no greater substantiation after *Gertz* than before that would permit recovery for a defamation action without the element of reputational damage.

We regard the decision we make today as consistent with the spirit of reform *Gertz* is striving to effectuate in some of the curious complexities of defamation law[5], and in the legitimate protection of First Amendment principles. At the same time, we preserve the fundamental and traditional concept of the defamation action. To do otherwise would subvert this cause of action and retreat from the principles advanced in *Gertz*.

In the trial below, Dodrill offered no evidence to show damage to reputation. Neither does a review of the evidence on liability support a finding of actual malice on the part of the newspaper. Absent a showing of actual malice, with no proof of damage to reputation, we must find there was insufficient evidence to go to the jury. On the proof presented, appellant's motion for a directed verdict should have been granted.

Although appellant asks that this case be reversed and dismissed, we find it appropriate in this situation to remand. We have followed this practice in other situations where we have reversed because of insufficiency of the evidence. We have stated:

> . . . Our ordinary procedure in reversing judgments in law cases is to remand for another trial, rather than dismiss the cause of action. It is only where it clearly appears that there can be no recovery that we consider it proper to dismiss the cause. . . . The evidence might

---

[4]Eaton, *The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer*, 61 Va. L. Rev. 1347 (1975).

[5]Prosser, *supra* § 112.

well have been much more developed than it was. This Court has held even where a judgment based on a jury verdict is reversed for insufficiency of the evidence to support it, there may be circumstances which justify remanding the case for a new trial. *Hayes Bros. Floor Co. v. Carter, Adm'x,* 240 Ark. 525, 401 S.W.2d 6 (1966).

In *St. L. S.W. Ry. Co. v. Clemons, Etc.,* 242 Ark. 707, 415 S.W.2d 332 (1967) we said:

> The general rule is to remand common law cases for new trial. Only exceptional reasons justify a dismissal. One of the exceptions is an affirmative showing that there can be no recovery. *Pennington v. Underwood,* 56 Ark. 53, 19 S.W. 108 (1892). There it was said that when a trial record discloses 'a simple failure of proof, justice would demand that we remand the cause and allow plaintiff an opportunity to supply the defect.'

See also *Home Ins. Co. v. Harwell,* 263 Ark. 884, 568 S.W.2d 17 (1978); *Southwestern Underwriters Inc. v. Miller,* 254 Ark. 387, 493 S.W.2d 432 (1973). And we have held this procedure applicable even when no proof was offered on an issue, and where it was demanded by simple justice or where it was not impossible that the deficiency in proof could be supplied. *Follet v. Jones,* 252 Ark. 950, 481 S.W.2d 713 (1972); *South. Farm Bur. Cas. Ins. v. Gottsponer,* 245 Ark. 735, 434 S.W.2d 280 (1968).

In this case it does not clearly appear from the record that there can be no recovery, nor has there been any affirmative showing that such is the case. The facts, earlier outlined, would not preclude a finding of damage to reputation. Additionally, the law of defamation, never noted for its clarity, has undergone a radical change since *Sullivan* and its offspring. Uncertainties and ambiguities have arisen as the courts have attempted to give more articulated features to the emerging new form. Questions have been left unanswered and the litigants have frequently been put in the position of having to second guess the determination of a given issue. Consequently, we believe in the posture of this case a remand is the appropriate course.

Turning to the other issues for the guidance of the trial court in later proceedings, the newspaper claimed error below for failure to direct a verdict and refusal of instructions that: Dodrill was a limited purpose public figure, actual malice was not proved, and gross negligence was not proved. These issues are summarily settled by the doctrine of the law of the case. *Gibson* v. *Gibson*, 266 Ark. 622, 589 S.W.2d 1 (1979). Although we have not directly addressed the issue, neither do we find that a negligence suit by a private individual must be proved by clear and convincing evidence. We said in *Dodrill* v. *Arkansas Democrat*, 265 Ark. 268, 590 S.W.2d 840 (1979) and again in *KARK-TV* v. *Simon and Smith*, 280 Ark. 208, 656 S.W.2d 702 (1983), that negligence is the proper standard and we hold to that view. The determination shall be by a preponderance of the evidence.

Appellant maintains the evidence was insufficient because Dodrill failed to provide any expert witness to testify to the standard of care for a publisher. Appellant cites no authority that supports such a requirement for publishers and we are not persuaded by the argument alone. We think the jury is capable of making that determination without being dependent upon expert testimony.

Appellant also urges that the instructions on "actual damages" were given to the jury without any guidance from the court as required by *Gertz*. The instructions given did not simply state that there must be "actual damages" but elaborated on the application of that term and, we think, provided the jury with sufficient guidance to reasonably and fairly assess such damages.

We agree with appellant's argument that the evidence of malice was not sufficient to support punitive damages. That issue should not have been presented to the jury. Unless evidence of more probative weight is produced on retrial, that issue should not again arise. *KARK-TV* v. *Simon and Smith, supra.*

One final issue requires comment — appellant argues the trial court should have permitted the introduction, en mass, of some twelve news articles concerning Dodrill which

had appeared in both Little Rock newspapers leading up to the publication of the two articles Dodrill complains of. Evidently, the trial judge refused them on the basis of relevancy. To the extent the articles were offered to prove Dodrill was a limited purpose public figure, the court was correct in refusing them, for reasons we have already stated. Whether the articles are, of themselves, admissible for other purposes we cannot on this record determine. The articles are only generally identified in the abstract and with nothing more, we cannot say whether, on retrial, their relevancy will be such that it would be an abuse of discretion to refuse them. See *Hamblin* v. *State,* 268 Ark. 497, 597 S.W.2d 589 (1980); *Arkansas Power and Light Co.* v. *Johnson,* 260 Ark. 237, 538 S.W.2d 541 (1976).

As the main focus of this opinion has stated, as damage to the plaintiff's character and reputation is an essential element of proof, evidence of a lack of good character and reputation is admissible on behalf of the defendant.

The case is reversed and remanded for further proceedings not inconsistent with this opinion.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I still adhere to the views expresseed in the first appeal of this case and my dissent on rehearing. *See Dodrill* v. *Arkansas Democrat Co.,* 265 Ark. 268, 590 S.W.2d 840 (1979). I explained in detail why I thought Dodrill had become a public figure and I am still of that view.