Richard R. SCHLEGEL, II and Jeri Schlegel, Appellants,

v.

The OTTUMWA COURIER, A DIVISION OF LEE ENTERPRISES INCORPORATED, and Russell R. Cunningham, Jr., Appellees.

Nos. 96–1040.

Supreme Court of Iowa.

Oct. 21, 1998.

Stephen D. Lombardi, of Lombardi Law Firm, Des Moines, for appellants.

Kasey W. Kincaid and Terri L. Combs of Faegre & Benson LLP, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN,* JJ.

LAVORATO, Justice.

A lawyer and his wife won substantial verdicts for compensatory damages against a newspaper publisher and editor-in-chief for incorrectly reporting that the lawyer had declared bankruptcy. In addition, the jury assessed punitive damages against the two defendants. The district court set aside the compensatory damage award as excessive and granted the defendants' motion for new trial. The court also granted the defendants' motion for judgment notwithstanding the verdict (JNOV) on the punitive damage award. The plaintiffs appeal from these rulings. They also challenge the district court's order barring certain evidence on retrial.

The defendants cross-appeal, contending that the district court should have granted their JNOV motion on the compensatory damage claim. The cross-appeal raises a number of issues. One of those issues is dispositive of this case: whether the plaintiffs produced sufficient evidence of "actual injury." We conclude the plaintiffs failed to produce such evidence and for that reason

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206(1997).

the district court should have sustained the defendants' motion for directed verdict and granted their motion for JNOV. We therefore affirm in part, reverse in part, and remand with directions.

## I. Facts.

Richard R. Schlegel, II is a successful attorney in Ottumwa, Iowa. He was the Wapello County Attorney from 1983 through 1986. He also is a leader in the American Heart Association and is otherwise active in community affairs.

The *Ottumwa Courier* is a newspaper of general circulation in the Ottumwa area with 19,494 subscribed readers. Lee Enterprises owns the *Courier*. The *Courier's* staff includes, among others, editor-in-chief Russell Cunningham; regional editor, Mike Augspurger; and a clerk, Heather Guiter. (For convenience we refer to the *Courier* and Cunningham collectively as the *Courier* unless we state otherwise.)

On April 19, 1993, the *Courier* incorrectly reported that Richard had declared bankruptcy. The incorrect report appeared in the *Courier's* courthouse records section on an interior page. In fact, Richard represented the debtor. The *Courier* printed a correction on the front page of the next day's edition, apologizing for the error.

The error sprang from a misreading of an official declaration of bankruptcy. According to the *Courier*, Guiter typed the error. Although she could not recall typing Richard's name specifically, she was the only one on duty the night the information arrived.

## II. Proceedings.

Richard and his wife, Jeri, sued the *Courier* and its editor-in-chief, Russell Cunningham. Richard claimed the paper defamed him causing him humiliation and damage to his reputation. Jeri claimed loss of consortium. Both sought punitive damages for willful and wanton misconduct.

At trial, several witnesses testified that they saw the incorrect bankruptcy notice, wondered as to its truthfulness, and never saw the front-page correction. All, however, acknowledged that they learned Richard had not filed for bankruptcy.

Richard testified about how the incorrect report affected him. Jeri testified she and Richard are not as socially active as they once were. "He has totally lost his sense of humor. He is ... a very, very angry man" and "he's not as easy to be with." According to her, "it's very difficult."

In addition to this testimony on compensatory damages, the Schlegels attempted to show punitive damages were appropriate. Among other things, the Schlegels introduced—over the *Courier's* strong objections—evidence of Regional Editor Mike Augspurger's substance abuse. In particular, Augspurger admitted to several operating while intoxicating convictions, which occurred before and after Richard's term as county attorney, and to a conviction for mailing a controlled substance. Through this testimony, the Schlegels were apparently attempting to suggest that Augspurger intentionally placed this incorrect entry in the paper because of his malice toward Richard as a former county attorney with a "tough-on-drugs" stance. There was no evidence that Augspurger related these convictions to Richard's tenure as county attorney. In its posttrial ruling, the district court ruled this evidence inadmissible on retrial because it was irrelevant and prejudicial and should have been rejected at trial.

The Schlegels also successfully introduced financial records of the *Courier's* owner, Lee Enterprises.

The jury awarded Richard a total of $230,000 in compensatory damages broken down as follows: impairment of reputation ($30,000), personal humiliation ($100,000), past mental anguish and suffering ($70,000), and future mental anguish and suffering ($30,000). The jury also awarded Jeri $150,000 compensatory damages for loss of consortium.

In addition, the jury found that the *Courier's* actions amounted to "willful and wanton disregard for the rights of another" and assessed punitive damages in the amount of $2,000,000. However, the jury concluded that the *Courier's* actions were not specifical-

ly directed at Richard. *See* Iowa Code § 668A.1 (providing that if defendant's conduct is not specifically directed at the plaintiff, seventy-five percent of the award is to be paid to the state).

### III. Scope of Review.

A JNOV must stand or fall on the grounds asserted in the motion for directed verdict. On appeal, we limit our review to those grounds. *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990).

When the district court considers a motion for JNOV, it must view the evidence in the light most favorable to the party against whom the motion is made. *Id.* The district court follows these same principles on a motion for directed verdict. *Id.* On our review, we consider the evidence in the same way, asking whether there was sufficient evidence to generate a jury question. *Id.*

Viewing the evidence in this manner, the district court must deny the motion for directed verdict or motion for JNOV if there is substantial evidence to support the claim or defense. *Id.* Without such evidence, a directed verdict or JNOV is appropriate. *Id.* Evidence is substantial if reasonable minds would accept it as adequate to reach a conclusion. *Id.*

### IV. Sufficiency of the Evidence to Prove Actual Injury.

**A. The parties' contentions.** The *Courier* argues for JNOV on the compensatory damage issues on the ground that there was no substantial evidence of damage to reputation. Without such a showing, the *Courier* insists that a plaintiff in a defamation suit against a news media defendant cannot recover for hurt feelings alone. In support of this argument on its motion for directed verdict and again on its motion for JNOV, the *Courier* cited and relied heavily on *Johnson v. Nickerson,* 542 N.W.2d 506 (Iowa 1996), a case it relies on here.

In resistance to the motion for directed verdict, the Schlegels argued that libel per se was the standard to apply, meaning that damages were presumed. On appeal, the Schlegels take a different approach, arguing that they did prove damage to reputation.

### B. Applicable law.

**1. The law of defamation generally.** The law of defamation includes the twin torts of libel and slander. *Lara v. Thomas,* 512 N.W.2d 777, 785 (1994); W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 111, at 771 (5th ed.1984) [hereinafter *Prosser & Keeton*]. Libel is generally a written publication of defamatory matter, and slander is generally an oral publication of such matter. *Prosser & Keeton* § 111, at 771. Authorities agree that

> [t]he law of defamation embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks. An action for defamation or slander is based upon a violation of this right.
>
> The gravamen or gist of an action for defamation is damage to the plaintiff's reputation. It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation.
>
> Defamation is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in the reputation and good name. A cause of action for defamation is based on the transmission of derogatory statements, not on any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property.

50 Am.Jur.2d *Libel and Slander* § 2, at 338–39 (1995).

Our own cases are consistent with this theme that defamation is based upon damage to the plaintiff's reputation. For example, in *Johnson,* we said that "[t]o recover in an action for defamation, a plaintiff must ordinarily prove some sort of cognizable injury, such as injury to reputation." 542 N.W.2d at 513; *see also Lara,* 512 N.W.2d at 785 (noting that "the gist of an action for libel or slander is the publication of written or oral statements which tend to injure a

person's reputation and good name"); *Prosser & Keeton* § 111, at 773.

Narrowing our discussion to libel, we note there are two types of libel: libel per se and libel per quod. *Johnson,* 542 N.W.2d at 510. Libel per se includes statements that have "a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse." *Id.* (quoting *Prewitt v. Wilson,* 128 Iowa 198, 202, 103 N.W. 365, 367 (1905)). Some examples of libel per se statements include an attack on the integrity and moral character of a party or an accusation that a person is a liar. *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108, 116 (Iowa 1984). Libel per quod simply means that one must refer to facts or circumstances beyond the words actually used to establish the defamation. *Johnson,* 542 N.W.2d at 510.

When statements are libelous per se, they are actionable in and of themselves without proof of malice, falsity, or damage. *Vinson,* 360 N.W.2d at 116. Thus, the jury is allowed to award substantial damages without the necessity of the plaintiff proving actual damage to reputation. The existence of damage to reputation is conclusively presumed from the publication of the libel. *Prosser & Keeton* § 112, at 795. In contrast, if a statement is libelous per quod, the plaintiff must prove damage to reputation and consequently any special damages such as mental anguish. *Johnson,* 542 N.W.2d at 510.

As *Prosser & Keeton* points out, "[d]efamation is not concerned with the plaintiff's own humiliation, wrath, or sorrow, except as an element of 'parasitic' damages attached to an independent cause of action." *Prosser & Keeton* § 111, at 771; 50 Am. Jur.2d *Libel and Slander* §§ 386, 387 (1995). In case of statements that are not libelous per se but libelous per quod, this means a plaintiff must first prove actual damage to reputation before the plaintiff can recover for mental anguish or hurt feelings. *Little Rock, Newspapers, Inc. v. Dodrill,* 281 Ark. 25, 660 S.W.2d 933, 935 (Ark.1983); 50 Am.Jur.2d

*Libel and Slander* §§ 386, 387 (1995). In case of statements that are libelous per se, damages for mental anguish or hurt feelings are allowed because damage to reputation is presumed. *Little Rock, Newspapers, Inc.,* 660 S.W.2d at 935; *Prosser & Keeton* § 112, at 795–96; 50 Am.Jur.2d *Libel and Slander* §§ 386, 387 (1995).

2. **The law of presumed damages after** *Gertz v. Robert Welch, Inc.,* **418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).** In *Gertz,* the Supreme Court held that the First Amendment does not permit private figures to recover presumed damages from news media defendants in defamation per se cases. 418 U.S. at 349, 94 S.Ct. at 3011, 41 L.Ed.2d at 810–11. In explaining its holding, the Court said:

> The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation for supposed damage to reputation without proof that such harm actually occurred. The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.

*Id.*

The Court concluded that the appropriate rule is one that "require[s] state remedies for defamatory falsehood [to] reach no further than is necessary to protect the legitimate interest involved." *Id.* The Court thus found it necessary "to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensa-

tion for actual injury." *Id.* The Court did not define "actual injury," but gave examples of what could constitute such injury:

> We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

*Id.* at 350, 94 S.Ct. at 3012, 41 L.Ed.2d at 811.

Although *Gertz* required a private figure plaintiff to prove "actual injury," the Court did not expressly mandate that the actual injury be to reputation. Thus, *Gertz* did not constitutionally mandate that damages be based on injury to reputation. In fact, two years later, the Supreme Court in *Time, Inc. v. Firestone* allowed recovery in a defamation action simply on a showing of emotional distress damages, stating:

> In [*Gertz*], we made it clear that States could base awards on elements other than injury to reputation, specifically listing "personal humiliation, and mental anguish and suffering" as examples of injuries which might be compensated consistently with the Constitution upon a showing of fault. Because respondent has decided to forego recovery for injury to her reputation, she is not prevented from obtaining compensation for such other damages that a defamatory falsehood may have caused her.

424 U.S. 448, 460, 96 S.Ct. 958, 968, 47 L.Ed.2d 154, 166 (1976). Simply put, the Federal Constitution does not bar recovery for a defamation action based solely on emotional distress damages.

Several courts have refused to follow *Time, Inc.* and, instead, continue to impose a reputational harm prerequisite in defamation actions. As one court explained:

> The spirit of the *Gertz* decision on this point is clearly one to protect First Amendment rights from unjustifiable and unsubstantiated intrusions. To allow re-

covery in a defamation action where the primary element of the cause of action is missing not only sets the law of defamation on end, but also substantially undercuts the impact *Gertz* seeks to effect. The law of defamation has always attempted to balance the tension between the individual's right to protect his reputation and the right of free speech. To totally change the character of defamation to allow recovery when there has been no loss of the former right, would be an unjustified infringement on the First Amendment.

*Little Rock, Newspapers, Inc.,* 660 S.W.2d at 936.

The court in *Little Rock, Newspapers, Inc.* did not overlook *Time Inc.*:

> While *Gertz* suggests, and [*Time, Inc.*] confirms, that the Constitution does not require proof of damage to reputation before recovery for mental suffering can be had, neither does [*Time, Inc.*] indicate that such an approach is favored. Indeed, the [*Time, Inc.*] decision has been strongly criticized and the opposite approach has been taken in subsequent decisions in other states. We can find no greater substantiation after *Gertz* than before that would permit recovery for a defamation action without the element of reputational damage.

*Id.* at 936–37 (citations and footnote omitted); *see also Garziano v. E.I. DuPont De Nemours & Co.,* 818 F.2d 380, 395 (5th Cir.1987) (imposing a reputational harm prerequisite in defamation actions); *Gobin v. Globe Publ'g Co.,* 232 Kan. 1, 649 P.2d 1239, 1243 (Kan. 1982) (same); *Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 28 (Minn.1996) (same); *France v. St. Clare's Hosp. & Health Ctr.,* 82 A.D.2d 1, 441 N.Y.S.2d 79, 83 (1981) (same).

Given our case recognition that defamation is based upon damage to reputation, we agree with those courts that have continued to impose a reputational harm prerequisite in defamation actions. We agree with the comments in *Little Rock, Newspapers, Inc.* that to do otherwise would set the law of defamation on end. The presumption limitation in *Gertz* was imposed to prevent the giving of "gratuitous awards of money damages far in excess of any actual injury." *Gertz,* 418 U.S.

at 349, 94 S.Ct. at 3011–12, 41 L.Ed.2d at 811. As *Little Rock, Newspapers, Inc.* wisely points out, to allow defamation damages without a showing of reputational harm would undercut the Supreme Court's purpose behind the presumption limitation.

■ Our recognition here that reputational harm is a prerequisite for parasitic damages such as mental anguish should not be surprising because we essentially said the same thing in *Johnson:* "To recover in an action for defamation, a plaintiff must ordinarily prove some sort of cognizable injury, such as an injury to reputation. Hurt feelings alone cannot serve as the basis of a defamation action." 542 N.W.2d at 513 (citation omitted). *Johnson* involved a suit against a news media defendant and was decided upon principles enunciated in *Gertz* and long after *Time, Inc.* What we have done here is simply to flesh out the reasons for this holding in *Johnson.*

In *Jones v. Palmer Communications, Inc.,* we acknowledged that "*Gertz* articulated an expansive definition of actual damages." 440 N.W.2d 884, 900 n. 5 (1989) (citation omitted). We also said we were "persuaded to accept *Gertz* as the appropriate definition of actual damages in a defamation action." *Id.* We disavow these statements to the extent they imply that a plaintiff need not prove reputational harm to recover "parasitic" damages such as emotional distress and humiliation.

■ **C. The merits.** We begin our discussion by first assuming without deciding that Richard is a private figure and was therefore only required to prove the *Courier* was negligent in publishing the incorrect report. *See Jones,* 440 N.W.2d at 889 (holding that private figure need only prove negligence in defamation action against news media defendant). Contrary to the district court's findings, the *Courier* has contended throughout these proceedings that Richard is a public figure and for that reason had to prove actual malice. *Gertz,* 418 U.S. at 346–47, 94 S.Ct. at 3010, 41 L.Ed.2d at 809 (holding that public officials and public figures must prove actual malice regarding defamatory statements about them; as for speech concerning private figures, states were left free to interpret their own law and apply any

level of protection short of strict liability). As for this damage issue, the *Courier* assumes, as we do, that Richard is a private figure.

Like the district court, we find there was insufficient evidence supporting the Schlegels' trial theory that Mike Augspurger, the regional editor, purposefully planted the incorrect report or that his substance abuse problem caused the error. In awarding punitive damages, the jury specifically found that the *Courier's* conduct was not directed specifically at Richard.

As mentioned, the district court granted the *Courier* a new trial on the issue of compensatory damages both as to Richard's claim and his wife's claim for loss of consortium and JNOV on the punitive damage claim. The district court's discussion on the compensatory damage issue as it relates to Richard's claim sets the tone for our discussion. The court wrote:

> The facts presented in connection with Schlegel's compensatory damage claim disclose that while the event in question made him very upset and mad, it did not cause any loss of business or reputation. In addition, he has recently developed a new product that he is attempting to market, he remains active in the Air Force Reserves, he is currently a fund raising chairman, and he indicated that he is not worried about the event happening again. Had Schlegel's reputation been damaged, it likely would have adversely affected his law practice. Schlegel presented no evidence that he had a good reputation prior to the publication or that his reputation was adversely affected.... Against this background, the jury awarded Schlegel $30,000 for impairment of reputation, $100,000 for personal humiliation, $70,000 for past mental anguish and suffering, and $30,000 for future mental anguish and suffering. Simply put, an award of $230,000 in compensatory damages is lacking in evidentiary support to the degree that it raises a presumption that it was a result of passion, prejudice, or other ulterior motive and shocks the judicial conscience.

In short, the district court was convinced there was no substantial evidence to support a jury finding of reputational harm. In other parts of its ruling, the court did note that Jeri testified "as to the physical manifestations of Schlegel's consternation over the false courthouse entry." From this we surmise the court did not grant the *Courier's* JNOV on compensatory damages because it believed hurt feelings and physical manifestations of those feelings were enough to submit the issue to the jury. Under our rule requiring reputational harm, they are not enough.

Our task then is to determine if the record supports the district court's finding that Schlegel suffered no harm to his reputation. As the district court stated, there is no evidence that the false report caused Richard a loss of business. In fact, before trial, Richard dismissed claims regarding loss of business suffered by his wife and him.

Although we have every reason to assume Richard is well regarded in his community and had a good reputation before the false report, he presented no evidence of that good reputation. The only evidence on this point is Richard's deposition testimony referred to in trial that he was well known, "good or bad." The Schlegels presented a number of witnesses, most of whom were friends, who saw the false report. None testified that Richard had any particular reputation before the false report or that they thought ill of him because of it.

Several cases since *Gertz* and *Time, Inc.* have rejected as insufficient similar evidence to show injury to reputation. For example, in *Richie*, a nationally syndicated television program showed a picture of the plaintiffs and incorrectly identified them as the parents of a child who had recovered damages against them for child abuse. The plaintiffs were actually the child's godparents. The plaintiffs testified they were embarrassed and humiliated by the broadcast. In addition one of the plaintiffs cited several inquiries from family and friends regarding his involvement with the abuse, described how a restaurant employee who had previously been friendly gave him the "cold shoulder," and about a year after the broadcast the restaurant served him cheeseburgers that were raw. Both plaintiffs argued that they "have come to understand they will never know whether people saw the broadcast or think ill of them because of it." 544 N.W.2d at 26.

Upholding the trial court's grant of a summary judgment in favor of the news media defendant, the Minnesota Supreme Court concluded the plaintiffs had failed to "demonstrat[e] that there is a material question of fact as to whether either of them suffered sufficient harm to their respective reputations to support a defamation claim." *Id.* at 27. In support of its conclusion, the court noted that the plaintiffs had failed to show a loss of income because of the broadcast, produced no evidence that anyone thought less of them because of it, and could point to no specific facts demonstrating that their reputations had been affected. *Id.* at 26–27.

In *Little Rock, Newspapers, Inc.*, two newspapers incorrectly reported that the plaintiff lawyer had failed the bar exam. The jury awarded the lawyer $40,000 damages for mental suffering. The appellate court struck down the award, noting that the plaintiff offered no evidence to show damage to reputation. 660 S.W.2d at 936.

In *Reveley v. Berg Publications, Inc.*, 601 F.Supp. 44 (W.D.Tex.1984), a dentist, who was also a mortician, recovered compensatory and punitive damages against a publisher of an article in a mortuary trade journal that defamed the dentist. The federal district court sustained the defendants' motion for JNOV, finding no actual injury to reputation. *Id.* The court found the following evidence was not sufficient to sustain a finding of actual injury:

> At the trial of this matter the court heard from plaintiff's friends and acquaintances, both personal and professional, of plaintiff's good character and excellent reputation as a dentist and mortician. No evidence was presented suggesting that as a result of reading the publication anyone thought any less of plaintiff in a personal or business sense. No evidence was heard that either of plaintiff's businesses suffered as a result of the publication. Contrary to plaintiff's contention, the evidence concern-

ing the display of the article in question to Charles Altsman by Professor Byron Starr, a person with whom plaintiff had had philosophical differences concerning mortuary trade practices predating this publication, showed that Mr. Altsman's opinion of plaintiff was unchanged by the article.

*Id.* at 45.

We agree with the district court that the Schlegels failed to produce substantial evidence of damage to reputation. We think the remedy, however, should be JNOV for the *Courier* on the issue of compensatory damages rather than new trial. Because the evidence falls short of establishing actual damages, we need not consider the Schlegels' contention that the district court erred in granting JNOV on the punitive damage claim. Some actual damages must be shown to support a claim for punitive damages. *Sundholm v. City of Bettendorf,* 389 N.W.2d 849, 853 (Iowa 1986).

Even if we were to consider the Schlegels' contention, our review of the record leads us to conclude the district court properly sustained the motion for JNOV on the punitive damage claim because there was no substantial evidence to support the award of punitive damages. The district court correctly grasped what happened here:

> The wrongful conduct in this case appears to be an accidental listing of Schlegel in the bankruptcy notice as demonstrated by the evidence and the jury's finding that the conduct was not directed specifically at Schlegel.

At most, the evidence supports a finding that the *Courier* was negligent. The evidence, however, certainly does not rise to the level of "willful and wanton disregard for the rights" of others, the standard for allowing punitive damages here. Iowa Code § 668A.1.

Loss of consortium is premised on injury to the spouse. *See Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R.,* 335 N.W.2d 148, 149 (Iowa 1983). Because there was no substantial evidence of actual injury to Richard's reputation, Jeri's loss of consortium award cannot stand.

## V. Disposition.

The district court correctly sustained the motion for JNOV on the punitive damage claim. We therefore affirm on that issue. The court however should have sustained the motion for JNOV on Richard's claim for compensatory damages and on Jeri's claim for loss of consortium. We therefore reverse on these issues and remand for an order (1) granting the *Courier's* motion for JNOV on Richard's claim for compensatory damages and on Jeri's claim for loss of consortium and (2) dismissing the case.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**