Angie **STANLEY** and Penny Carney, Plaintiffs,

v.

**GENERAL MEDIA COMMUNICATIONS, INC., et al.,** Defendants.

No. 00–1003.

United States District Court, W.D. Arkansas, El Dorado Division.

Jan. 12, 2001.

---

Bill Wells, Warren, AR, David O. Bowden, Little Rock, AR, for plaintiffs.

Phillip E. Kaplan, Kaplan, Brewer & Maxey, John E. Tull, Kristine G. Baker, Quattlebaum, Grooms, Tull & Burrow, PLLC, Little Rock, AR, for defendants.

### MEMORANDUM OPINION

BARNES, District Judge.

Before the Court are motions for summary judgment by separate defendants General Media Communications, Inc. ("General Media") and SSL America, Inc. ("SSL"). The Plaintiffs have responded to the motions. Plaintiffs Angie Stanley and Penny Carney bring this suit against General Media, the publisher of *Penthouse* magazine and SSL, the manufacturer of Durex condoms. Plaintiffs allege libel, intentional infliction of emotional distress (recognized in Arkansas as outrage), invasion of privacy-false light, and invasion of privacy-appropriation.

### BACKGROUND

Plaintiffs spent the Spring Break of their junior year in high school in Panama Beach, Florida. During the trip, the girls voluntarily participated in a contest held in a pavilion on the beach. (Def. General Media's Exh. 1; Carney Dep. p. 27–30; Stanley Dep. 26–31). The contest rules required each participant to place a blindfold over her eyes, unwrap a condom, and place the condom on a "demonstrator," which was a white plastic phallus. The winner of the contest was the participant who finished the task in the shortest amount of time. (Carney Dep. p. 72, 92; Stanley Dep. 32, 88). Both Carney and Stanley played the game twice. Ultimately, Stanley won the contest and received a tee shirt and a poster. (Carney Dep. p. 74; Stanley Dep. 45). Carney's mother, who accompanied the girls on the trip, videotaped the contest. However, Mrs. Carney later erased the tape because she felt it was not in good taste. (Clara Carney Dep. p. 22)

Both Plaintiffs testified that they entered the pavilion and participated in the contest voluntarily. (Carney Dep. p. 39–40; Stanley Dep. 40). Plaintiffs explained that they did not have any expectation of privacy while participating in the contest. Plaintiffs understood that people could and did watch them during the contest. Plaintiffs understood that the contest was a condom-fitting contest, and that they were free to leave the pavilion at any time. (Carney Dep. p. 39–40; Stanley Dep. 40).

The Plaintiffs were photographed during the contest, and one photo was subsequently published by General Media in a regular column of *Penthouse* Magazine called "Hard Times." (Plaintiff's Exh. C, Defendant General Media's Exh. 2). The record does not indicate that SSL, the manufacturer of Durex condoms had any part whatsoever in publishing the material at issue in this case. The Plaintiffs agree that the photo is an accurate depiction of themselves. The photo was accompanied by the following text:

> Pictured here is the ecstatic moment when Angie Stanley of Hermitage, Arkansas, was declared the hands-down winner of a spring-break condom appli-

cation contest sponsored by Durex–Shiek condoms. Angie beat out all the other skilled participants in this test of dedication and dexterity. The rules required the blindfolded contestants to rip open a Durex packet and apply a condom to the large white plastic "demonstrator."

(Def. General Media Exh. 2).

An Editor's comment followed the plain text, and was set off in italic print:

We don't care about the finish; we want to be invited to the pre-contest drills. We'll even bring our own blindfold and "demonstrator."

( Def. General Media Exh. 2).

Plaintiffs stated they were not shunned or ridiculed by their families, friends, or members of their church or community. The Plaintiffs' friend, Holly Johnson, who was on the Spring Break trip, stated that she did not think the Plaintiffs' reputations had been damaged in any way. The Plaintiffs did not report any severe emotional distress. The Plaintiffs did not make any changes in their school or community activities because of embarrassment regarding the publication. In fact, both of the Plaintiffs participated in pageants and received student-voted honors at school. Neither of the Plaintiffs suffered any problems with romantic relationships. Clara Carney, the mother of one of the Plaintiffs testified that she did not believe her daughter's reputation was damaged in the community. (Clara Carney Dep. 30–31), (Stanley Dep. p. 54, 74–76, 100–101), (Carney Dep. 77–78, 95–96, 105), (Johnson Dep. 38–41).

## DISCUSSION

*Standard of Review*

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judg-

ment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party." *White v. Farrier*, 849 F.2d 322, 325 (8th Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Although the defendant seeking summary judgment "has the burden of showing that there is no genuine issue of [material] fact, [this does not relieve Plaintiff of his] own burden of producing in turn evidence that would support a jury verdict." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505. If Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the defendant is entitled to summary judgment. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir.1979), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Court of Appeals for the Eighth Circuit has reviewed the burdens of the respective parties in connection with a summary judgment motion. In *Counts v. M.K.-Ferguson Co.*, 862 F.2d 1338 (8th Cir.1988), the court stated:

[T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to] point[ ] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify

that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339, *quoting, City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

### 1. *Invasion of Privacy*

■ The Second Restatement of Torts, § 652A (1977) defines the tort of invasion of privacy: (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other. (2) The right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another (b) appropriation of the other's name or likeness (c) unreasonable publicity given to the other's private life (d) publicity that unreasonably places the other in a false light before the public. The Arkansas Supreme Court has adopted the Restatement law on invasion of privacy. *See Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 637, 590 S.W.2d 840 (1979).

### A. *Appropriation*

■ The Second Restatement of Torts § 652(c) provides that "one who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy." Mere publication of the person's likeness in a commercial newspaper or magazine does not create a cause of action for misappropriation. *See Comment, Restatement (Second) of Torts* § 652(c); *Fredrickson v. Hustler Magazine*, 607 F.Supp.

1341, 1360 (N.D.Tex.1985), 799 F.2d 1000 (5th Cir.1986); *Ann–Margret v. High Society Magazine*, 498 F.Supp. 401, 406 (S.D.N.Y.1980). As the Court noted in *Fredrickson*, "the public must be able to identify the person from the photograph or drawing, *and the defendant must have capitalized upon the likeness of that person in order to sell more magazines or newspapers." Fredrickson*, 607 F.Supp. at 1360 (emphasis added). The tort of invasion of privacy-appropriation requires *commercial* use of a person's name or likeness. *See Olan Mills, Inc. of Texas v. Dodd*, 234 Ark. 495, 353 S.W.2d 22 (1962); *Zacchini v. Scripps–Howard Broadcasting Co.*, 351 N.E.2d 454, 459 (1976), 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); *Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 883 (9th Cir.1988).

■ Although the Plaintiffs were identified by name and hometown in the publication, no evidence suggests that the Plaintiffs would be easily identified by the general public. More importantly, there is no evidence that *Penthouse* capitalized on the Plaintiffs' likeness to sell copies of its 25th Anniversary Edition. The names and photo of the Plaintiffs was in no way used to advertise the magazine. In the 2.5 in. × 2.5 in. photo, the Plaintiffs are either fully dressed or wearing a swimsuit, seated behind a table, and smiling and laughing. Given the content of the publication as a whole, the Court is confident that no reasonable jury could conclude that *Penthouse* magazine intended or expected that patrons would buy the magazine on the basis of the photo at issue. Defendant General Media did not appropriate Plaintiffs' name or likeness for commercial use. No evidence suggests that Defendant SSL had any participation in the publication of the photo or accompanying text. Plaintiffs' claim for invasion of privacy-appropriation is dismissed, and separate Defen-

dants' motions for summary judgment on this claim are granted.

### B. False Light

The elements of the tort of false light are: (1) that the false light in which she was placed by the publicity would be highly offensive to a reasonable person, and (2) the defendant acted with actual malice or reckless disregard as to the falsity of the publicized matter. *See Dodson v. Dicker,* 306 Ark. 108, 812 S.W.2d 97 (1991); *Peoples Bank and Trust v. Globe International Publishing, Inc.,* 978 F.2d 1065, 1068 (8th Cir.1992). To prove a false light claim, Arkansas requires a showing of actual malice by clear and convincing evidence. *See Dodrill,* 265 Ark. 628, 590 S.W.2d 840; *Peoples Bank and Trust,* 978 F.2d at 1068. In *Peoples Bank and Trust,* the Eighth Circuit explained that actual malice in this context involves publication of false information with the intention that the public construe the information as factual. See *Peoples Bank and Trust,* 978 F.2d at 1068.

The Plaintiffs agree that the photo is an accurate, unmanipulated depiction of themselves participating in the condom-fitting contest. In her deposition, Stanley complained that the text referred to them as "skilled participants," in a "test of dedication and dexterity," and characterizes the event as an "ecstatic moment." The plain text accompanying the photo can only logically be understood as describing the events in the photo. The plain text refers to the Plaintiffs' skills at the game being played. Any game which has a blind-folded participant to complete an activity using the small motor skills required to unwrap a condom and place it on a phallus in a short amount of time is certainly a game of dexterity and some degree of dedication. Finally, from the expression on the Plaintiffs' faces in the photo, it appears to be an "ecstatic moment." The editor's comment in italics cannot be reasonably understood to be a statement of fact. The photo of Plaintiffs and the accompanying text published by *Penthouse* magazine is not false. Therefore, the Defendants could not have intentions that the public take false information as true, and this Court cannot find any evidence of reckless disregard for the truth or actual malice. Defendant General Media did not show the Plaintiffs in a false light. Defendant SSL had no part whatever in the publication of the photo and accompanying text. The false light claim is dismissed, and the motions by separate Defendants on the false light claim are granted.

### 2. Libel

Arkansas law requires some evidence of reputational harm to support a libel claim. See *Little Rock Newspapers, Inc. v. Dodrill,* 281 Ark. 25, 28–29, 660 S.W.2d 933 (1983)("*Dodrill II*"). The Arkansas Supreme Court stated in *Dodrill II:* "It is settled law that damage to reputation is the essence of libel, and protection of the reputation is the fundamental concept of the law of defamation." *Id.* Reputational injury cannot be presumed in a case against media defendants. *Id.* at 30, 660 S.W.2d 933 (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). In addition, the subject matter of a libel claim must be false. See R. Smolla, Law Of Defamation § 1.08 (1986).

As discussed above, the publication at issue was not false. Moreover, the record wholly contradicts damage to the reputations of the Plaintiffs. Plaintiffs stated they were not shunned or ridiculed by their family, friends, members of their church or community. The Plaintiffs' friend Holly Johnson stated that she did

not think the Plaintiffs' reputations had been damaged in any way. The Plaintiffs did not report any severe emotional distress. The Plaintiffs did not make any changes in their school or community activities because of embarrassment regarding the publication. Neither of the Plaintiffs suffered any problems with romantic or friendly relationships. Clara Carney, the mother of one of the Plaintiffs testified that she did not believe her daughter's reputation was damaged in the community. Aside from the fact that nothing in the publication was false, the record is clear that Plaintiffs, by their own admission, have not suffered any actual reputational damage. Defendant SSL did not have any part in the publication of the photo and text. General Media is not liable for libel against Plaintiffs. Plaintiffs' claim for libel are dismissed, and separate Defendants motions for summary judgment on the libel claim are granted.

### 3. Intentional Infliction of Emotional Distress

For the claim for intentional infliction of emotional distress, or outrage, the Plaintiff must prove: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. See Crockett v. Essex, 341 Ark. 558, 19 S.W.3d 585 (2000)(Court denied outrage claim where funeral director hurried family members through a funeral service, behaved rudely, and drove over graves and gravestones). The Arkansas Supreme Court has stated that it gives a very narrow view of the tort of outrage, and that it requires clear-cut proof to establish the elements in outrage cases. See Croom v. Younts, 323 Ark. 95, 913 S.W.2d 283 (1996). "Merely describing the conduct as outrageous does not make it so . . . ." Id.

The record contains no evidence that either separate Defendant intended to inflict distress on Plaintiffs. This Court does not believe that publishing the photo of the Plaintiffs' participation in a condom-fitting contest is "intolerable in a civilized community" or beyond all possible bounds of decency, especially considering the strict approach the Arkansas Supreme Court has taken in denying outrage claims. Certainly no jury could find that the minor distress, or embarrassment, described by Plaintiffs was the kind that no reasonable person could be expected to endure. The Plaintiffs have failed to prove a claim for intentional infliction of emotional distress, or outrage. Defendant SSL had no part in publishing the material at issue. Defendant General Media is not liable to Plaintiff for intentional infliction of emotional distress. The claim for intentional infliction of emotional distress is dismissed, and separate Defendants' motions on this claim are granted.

### CONCLUSION

For the reasons stated in this opinion, the motions for summary judgment by separate Defendants General Media and SSL are hereby granted on all counts. Plaintiffs' claims for invasion of privacy-appropriation and false light, libel, and intentional infliction of emotional distress are hereby dismissed as against separate Defendants General Media and SSL. Plaintiffs' claims against separate Defendant Joe Skipper, Photographer are not dismissed. The Court anticipates granting

a continuance in this matter in regard to the Plaintiffs' claims against separate Defendant Joe Skipper.