# IN THE COURT OF APPEALS OF IOWA

No. 20-0563
Filed November 30, 2020

**RICHARD BAUER, Individually and as Trustee for the KENDALL BAUER TRUST,**
       Plaintiff-Appellant,

**vs.**

**BRADLEY R. BRINKMAN,**
       Defendant-Appellee.
_____

       Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary,

Judge.


       Plaintiff appeals from the district court's order granting defendant's motion

for summary judgment and denying plaintiff's motion for partial summary judgment.

**AFFIRMED.**


       Harold K. Widdison, Sioux City, for appellant.

       Ryland Deinert and Rene Charles Lapierre of Klass Law Firm, L.L.P., Sioux

City, for appellee.


       Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

This defamation suit stems from derogatory statements posted on the social media networking internet site Facebook. To set the stage for the suit, we first introduce the participants and what transpired between them.

## I.     Background

The Kendall R. Bauer Trust owns an apartment building in Sloan, Iowa, known as the Bauer Apartments. The trustee of the trust, Richard Bauer, resides in Sloan and manages the apartment building.

K.L. is also a resident of Sloan. She owns and operates a dog grooming and boarding business. As part of that business, she began construction on a dog care facility in a lot adjacent to the Bauer Apartments.

During the course of the construction of the dog care facility, Bauer contacted K.L. to express concerns that the outdoor "dog run" may become a nuisance issue and could be in violation of Sloan's zoning ordinance. Bauer also contacted the Sloan city council about his concerns. When his concerns were not addressed to his satisfaction, Bauer filed suit against the city, alleging the city failed to enforce its zoning ordinances.

During the pendency of Bauer's lawsuit against the city, K.L. took to airing her disgruntlement with the situation on Facebook, posting comments about Bauer, Bauer Apartments, and the dispute regarding construction of the dog care facility. K.L.'s adult daughter joined the Facebook fray, as did the defendant, Bradley Brinkman. It was Brinkman's commentary that resulted in this lawsuit, as Brinkman posted the following comment:

It is because of shit like this that I need to run for mayor! Mr. Bauer, you sir are a PIECE OF SHIT!!! Let's not sugar coat things here people, [K.L.] runs a respectable business in this town! You sir are nothing more than a Slum Lord! Period. I would love for you to walk across the street to the east of your ooh so precious property and discuss this with me!

Bauer filed suit against Brinkman alleging Brinkman's statement that Bauer is a "slum lord" constituted libel.[1] Bauer filed a motion for partial summary judgment, seeking judgment as a matter of law on liability with only damages left to be determined at trial. Brinkman filed a motion for summary judgment seeking to dismiss Bauer's action in its entirety. The district court denied Bauer's motion and granted Brinkman's. Bauer appeals.

## II.      Standard of Review

Summary judgment rulings are reviewed for corrections of errors at law. *Homeland Energy Solutions, LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020). Summary judgment is properly granted in a defamation suit when the moving party shows there is no genuine issue of fact and the party is entitled to judgment as a matter of law. *Behr v. Meredith Corp.*, 414 N.W.2d 339, 341 (Iowa 1987).

## III.      Analysis

The district court based its summary judgment decision on a determination that the alleged defamatory statement was a statement of opinion rather than fact. Drawing the line between opinion and fact is sometimes difficult. *See Jones v.*

---

[1] In his petition filed to initiate the suit, it is not entirely clear which of Brinkman's statements Bauer claimed to be libelous. During the course of the proceedings in district court, it became clear Bauer's claims were limited to the "slum lord" comment, and the parties have so limited their arguments on appeal. We also note that, in his petition, Bauer asserted claims for libel per se, libel per quod, and libel by implication. Given our resolution of the dispute as set forth in this opinion, we need not differentiate between the various theories of libel asserted by Bauer.

*Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 891 (Iowa 1989), *overruled on other grounds by Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 224 (Iowa 1998)). However, drawing this line is important because opinions are "absolutely protected under the first amendment." *Id.* Because drawing this line involves important first amendment issues, its determination is one for the court rather than the fact finder. *Id.* The court looks to the totality of the circumstances to determine whether a statement is actionable. *Id.* To make this determination, courts look to four factors: (1) whether the "statement 'has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous'"; (2) the degree to which the statement is "objectively capable of proof or disproof"; (3) "the context in which the" statement occurs; and (4) "the broader social context into which" the statement fits. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (quoting *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984)).

We begin our analysis of the first two factors by noting that the term "slum lord" is not defined in Brinkman's Facebook post. Nevertheless, a legal dictionary defines the term to mean, "A real-property owner who rents substandard housing units in a crowded, economically depressed area and allows the units to fall into further disrepair, esp. while charging unfairly high rents," or simply "the owner of any run-down rental property." *Slumlord*, Black's Law Dictionary (11th. ed. 2019); *see also Ramunno v. Cawley*, 705 A.2d 1029, 1038 (Del. 1998) (finding an article that describes the plaintiff as a "slumlord" "may convey the inaccurate impression that [the plaintiff] does, in fact, own a sizable amount of sub-standard rental housing"); *Rasky v. Columbia Broad. Sys., Inc.*, 431 N.E.2d 1055, 1058 (Ill. App.

Ct. 1981) (relying on dictionary definitions to construe "slum lord" "to mean that plaintiff owned buildings in a poor and dirty neighborhood or, simply stated, that plaintiff was a landlord in a slum"). Bauer also supplies us with his proposed definition of the term,[2] though his definition was not in any way stated in the posted comment.

While slum lord is capable of a definite meaning, its appearance in Brinkman's comment is vague enough that a reader of the post would be left to use his or her own definition, which would result in the term meaning different things to different people. *See Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 771 (Iowa 2006) ("The statement that the plaintiff must prove false is not the literal wording of the statement but what a reasonable reader or listener would have understood the author to have said."). This indefiniteness as to the meaning of the term cuts against a conclusion that it was a statement of fact. Further, the above definitions are not particularly capable of objective proof or disproof, as even Bauer's proposed definition uses subjective, difficult-to-impossible to prove or disprove concepts such as a landlord acting "without concern for tenants."

Additionally, Brinkman's comment that Bauer is a "slum lord" followed on the heels of calling Bauer a "piece of shit." While understandably offensive and

---

[2] Relying on an internet source, Bauer proposes the definition of the term as:
> A slumlord is an unscrupulous landlord who milks a property without concern for tenants, neighborhoods or their own long term interests. Slumlords overcharge for property in poor neighborhoods that is kept in poor repair and allowed to deteriorate. Some indicators of property run by a slumlord include number of police calls, and city and county code violations on the properties.

*Slumlord Law and Legal Definition*, https://definitions.uslegal.com/s/slumlord (last visited Nov. 20, 2020).

insulting, this type of name calling is generally not actionable. *See* 50 Am. Jur. 2d *Libel and Slander* § 160 (Oct. 2020 update) ("While offensive to the subject, certain types of communications are not actionable. . . . Courts are required, for the purposes of a defamation claim, to differentiate between defamatory statements and obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse. Although insults are offensive, they do not rise to the level of defamation." (footnotes omitted)). Stated another way:

> The common law has always differentiated sharply between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse. It has thus been held that a libel does not occur simply because the subject of the publication finds the publication annoying, offensive, or embarrassing. . . .
> No matter how mean or vulgar, such language is not defamatory. It is not defamatory, for example, to call someone a "bastard," or a "son of a bitch," or an "idiot." No matter how obnoxious, insulting, or tasteless such name-calling, it is regarded as a part of life for which the law of defamation affords no remedy.

1 Rodney A. Smolla, Law of Defamation §§ 4.7–.8 (2d ed. Nov. 2020 update) (footnotes omitted). Given the nebulous nature of the term "slum lord," standing alone as it was in this case, the first two factors cut in favor of the statement being that of opinion rather than fact.

Having determined the first two factors cut in favor of finding Brinkman's words to constitute nonactionable opinion rather than fact, we turn to the last two factors. These factors cause us to consider the fact that Brinkman's statement was made on Facebook and the context within which it was made on that social media platform in determining whether the statement was opinion protected by the first amendment. *See Jones*, 440 N.W.2d at 891 (holding expression of opinions is not defamation and is protected by the first amendment). Although not a

defamation case, the United States Supreme Court made the following observations about the role of social media as a forum for exercising first amendment rights:

> A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. The Court has sought to protect the right to speak in this spatial context. A basic rule, for example, is that a street or a park is a quintessential forum for the exercise of First Amendment rights. Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire.
>
> While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the "vast democratic forums of the Internet" in general, and social media in particular. Seven in ten American adults use at least one Internet social networking service. One of the most popular of these sites is Facebook, the site used by petitioner leading to his conviction in this case. According to sources cited to the Court in this case, Facebook has 1.79 billion active users. This is about three times the population of North America.
>
> Social media offers "relatively unlimited, low-cost capacity for communication of all kinds." On Facebook, for example, users can debate religion and politics with their friends and neighbors or share vacation photos. On LinkedIn, users can look for work, advertise for employees, or review tips on entrepreneurship. And on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner. Indeed, Governors in all 50 States and almost every Member of Congress have set up accounts for this purpose. In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics "as diverse as human thought."

*Packingham v. North Carolina*, ___ U.S. ___, ___, 137 S. Ct. 1730, 1735–36 (2017) (citations omitted). A New York trial court also provided the following observations on Facebook as a public forum in the context of a defamation suit:

> It has been noted that the culture of Internet communications, as distinct from that of print media such as newspapers and magazines, encourages a freewheeling, anything-goes writing style. Courts have expressed the application of defamation claims to Internet forums:

> Internet forums are venues where citizens may participate and be heard in free debate involving civic concerns. It may be said that such forums are the newest form of the town meeting. We recognize that, although they are engaging in debate, persons posting to these sites assume aliases that conceal their identities or "blog profiles." Nonetheless, falsity remains a necessary element in a defamation claim and, accordingly, "only statements alleging facts can properly be the subject of a defamation action." Within this ambit, the Supreme Court correctly determined that the accusation on the newspaper site that the plaintiff was a "terrorist" was not actionable. Such a statement was likely to be perceived as "rhetorical hyperbole, a vigorous epithet." This conclusion is especially apt in the digital age, where it has been commented that readers give less credence to allegedly defamatory Internet communications than they would to statements made in other milieus. Accordingly, we conclude that this statement constituted an expression of opinion, and, as such, is nonactionable.

*Kindred v. Colby*, No. 2014/06421, 2015 WL 12915686, at *5 (N.Y. Sup. Ct. May 15, 2015) (citations omitted).

With these observations by other courts to help guide us, we consider the context of Brinkman's statements. The statements were made by adding to a chain of comments started between private individuals expressing disgruntlement over Bauer's dispute with the city regarding K.L.'s dog care facility. The message chain was not related to a news account or any other form of communication that purported to be fact based. Instead, it was clearly an exchange of opinions about the topic at hand. Brinkman's comments did not purport to interject facts to the discussion, but, instead, merely added to the string of expressed opinions. The comments focused on the dispute over K.L.'s dog care facility and not on Bauer's rental property. *See Ramunno*, 705 A.2d at 1035–38 (finding a letter about the defendant's rental properties and resulting newspaper story, which referred to the defendant as a "slumlord" in the headline, was potentially defamatory); *Rasky*, 431

N.E.2d at 1057 (considering whether a television news story about the defendant's rental properties, which referred to the defendant as a "slumlord" during the broadcast, was defamatory); *Near E. Side Cmty. Org. v. Hair*, 555 N.E.2d 1324, 1328–31 (Ind. Ct. App. 1990) (finding a presentation on "slum landlords" that referred to the plaintiffs was potentially defamatory). We conclude that anyone viewing Brinkman's comments would have viewed them as nothing more than expressions of Brinkman's opinions, rather than a declaration of facts. Viewed in this context, the last two factors of the analysis join the first two factors in cutting in favor of a finding that Brinkman's statements were opinions rather than facts.

To be clear, we are not saying that statements made on Facebook or other social media forums cannot be defamatory as a categorical rule. *See* 1 Smolla, Law of Defamation § 6:70.50 (suggesting courts should not recognize a talismanic "Twitter defense" or "Facebook defense" to otherwise actionable statements). Rather, we are acknowledging that, when alleged defamatory statements are made on a social media platform, the forum in which the statements were made is a contextual factor to consider in determining whether the statements are an expression of opinion or fact. In this case, we find the context of the postings on Facebook contribute to the conclusion Brinkman's statements were those of opinion and are thus protected by the first amendment.

**IV.**     **Conclusion**

Brinkman's comments may have been vulgar, offensive, insulting, and just plain rude, but they did not rise to the level of defamatory statements because they were expressions of opinion protected by the first amendment.  Having reached this conclusion, it is not necessary to address any other issues raised by the parties.  Finding the statements at issue did not constitute defamation, we affirm the district court's denial of Bauer's motion for summary judgment and grant of summary judgment to Brinkman.

**AFFIRMED.**