# IN THE COURT OF APPEALS OF IOWA

No. 22-1940
Filed January 24, 2024

**CRAIG MALIN,**
      Plaintiff-Appellant/Cross-Appellee,

**vs.**

**LEE ENTERPRISES, INC., LEE PUBLICATIONS, INC., d/b/a WATERLOO CEDAR FALLS COURIER, ST. LOUIS POST-DISPATCH, LLC, d/b/a ST. LOUIS POST DISPATCH, ROY BIONDI, RAY FERRIS, TOD ROBBERSON and KEVIN MOWBRAY,**
      Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

Craig Malin appeals the district court's summary judgment ruling. The defendants cross-appeal, asserting the court erred in not also granting summary judgment on additional grounds. **AFFIRMED ON APPEAL AND CROSS-APPEAL.**

Theodore Sporer, Des Moines, for appellant/cross-appellee.

Ian J. Russell, Abbey C. Furlong, and Jenny L. Juehring of Lane & Waterman LLP, Davenport, for appellees/cross-appellants.

Heard by Tabor, P.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

Former Davenport city administrator Craig Malin brought a civil action against Lee Enterprises, Inc., doing business as the Quad-City Times, and two of its writers alleging the newspaper published articles in 2014 and 2015 that libeled him and intentionally interfered with his employment contract. With respect to Malin's libel claims, the district court ultimately granted summary judgment in favor of the defendants. The intentional-interference-with-contractual-relations claim proceeded to a jury trial, and the jury found in favor of the defendants. Malin appealed, and a panel of this court "affirm[ed] the verdict and judgment in favor of the defendants." *Malin v. Quad-City Times*, No. 19-1838, 2021 WL 1399837, at *3 (Iowa Ct. App. Apr. 14, 2021).

In 2019, while those proceedings were ongoing, two other Lee Enterprises, Inc. newspapers—the Waterloo Cedar Falls Courier and the St. Louis Post-Dispatch—printed editorials under the heading "Opinion." The editorials were entitled either "Editorial: Lawsuit threatens to put a chill on aggressive reporting that exposes wrongdoing" or "Truth on trial[:] Lawsuit could put a chill on aggressive journalism that exposes wrongdoing" and were printed as follows:

> Libel allegations always send a shudder through news organizations, but thanks to First Amendment protections affirmed by the U.S. Supreme Court, judges rarely agree to hear libel cases against reporters and even more rarely do courts side with plaintiffs. The bar is set extraordinarily high for good reasons. Otherwise, corrupt officials like former St. Louis County Executive Steve Stenger could use frivolous lawsuits to bankrupt local organizations whose aggressive reporting exposes wrongdoing.
> In Davenport, Iowa, a former city administrator is trying a chilling tactic to punish the local newspaper for reporting that exposed backroom wheeling and dealing and cost him his job. The accuracy of reporting by Davenport's Quad-City Times newspaper

might not be adequate to fend off the "tortious interference" case brought by former city administrator Craig Malin.

The Quad-City Times, which along with this newspaper is owned by Lee Enterprises, published a series of damning reports in 2015 exposing involvement by Malin and Davenport's former city attorney in the advancement of taxpayer-funded groundwork for a future casino project. The city council and mayor had given them no authorization to do so. The newspaper's reporting led to Malin's negotiated departure from office.

Recall the backroom wheeling and dealing by Stenger, who likely would have escaped public accountability if not for the Post-Dispatch's aggressive reporting. Stenger and his cronies tried all kinds of maneuvers to silence this newspaper's reporting but failed.

Malin tried a libel lawsuit in 2017 but also failed. Malin is instead suing the Quad-City Times for tortious interference, arguing that the newspaper's reporting interfered with his employment contract. In June 2015, the city council overwhelmingly approved a severance agreement that Malin signed. He's now city manager in the northern California town of Seaside.

But his resort to a tortious interference complaint gives him the ability to sidestep the Supreme Court's normal libel standard of proof for plaintiffs in news media cases—that reporters displayed a "reckless disregard" for the truth, and were malicious and premeditated in trying to damage the plaintiff. That's why this case is so troubling. Adherence to professional reporting standards might not provide protection—as suggested by Judge Nancy Tabor's decision to let the case proceed.

Attorney Sarah Matthews, with the Reporters Committee for Freedom of the Press, warns the case "could have a significant chilling effect" on news coverage.

The mere threat of a tortious interference lawsuit caused CBS News to back down from an investigative report on "60 Minutes" in 1995 exposing that a chief executive of a major tobacco company lied about his knowledge of nicotine's addictiveness. Rather than face potential bankruptcy from such a lawsuit, CBS pulled back—even though the truthfulness of its report was not challenged.

The trial starts Monday in Iowa. The only acceptable ruling would be one that upholds press freedoms and rejects frivolous efforts to stifle aggressive reporting.

In response, Malin brought the instant action against Lee Enterprises, Inc.; Waterloo-Cedar Falls Courier; St. Louis Post-Dispatch; Roy Biondi; Ray Farris; Tod Robberson; and Kevin Mowbray. Malin's claims include defamation; invasion of privacy; unjust enrichment; intentional infliction of emotional distress; and

negligent hiring, training, and supervision. Malin moved for partial summary judgment on his defamation claim. The defendants resisted and filed their own motion for summary judgment. The district court ultimately denied Malin's motion and instead granted summary judgment in favor of the defendants. Although it granted the defendants summary judgment on other grounds, the court rejected the defendants' contention that Malin's claims were barred by res judicata.

Malin appeals claiming the district court erred by denying his partial motion for summary judgment and instead granting summary judgment in favor of the defendants.[1] The defendants cross-appeal the rejection of their res judicata theory.

## I.     Scope and Standard of Review

Our review of a grant of summary judgment is for correction of errors at law. *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.*; Iowa R. Civ. P. 1.981(3). "The record on summary judgment includes the pleadings, depositions, affidavits, and exhibits presented." *Stevens*, 728 N.W.2d at 827. "We review the evidence in the light most favorable to the nonmoving party." *Id.*

---

[1] Malin also raises a constitutional claim on appeal. However, that claim is not preserved for our review because Malin never developed the argument below. *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322–23 (Iowa 2013) ("A party cannot preserve error for appeal by making only general reference to a constitutional provision in the district court and then seeking to develop the argument on appeal.").

## II.     Discussion

The claims in this case are all rooted in and inextricably intertwined with Malin's defamation claim.     *See Malin*, 2021 WL 1399837, at *2 (applying defamation standards to other causes of action that are rooted in defamation).  So if the district court properly granted summary judgment in favor of the defendants with respect to that claim, then all of Malin's other claims necessarily fail.

"The law of defamation includes the twin torts of libel and slander.  Libel is generally a written publication of defamatory matter, and slander is generally an oral publication of such matter."  *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998) (internal citations omitted).  "Unique rules apply in defamation cases because First Amendment rights are implicated."  *Stevens*, 728 N.W.2d at 827.

> In an ordinary case, a plaintiff establishes a prima facie claim for defamation by showing the defendant "(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff."  We have previously held the defamatory publication need not be explicit, but may be implied "by a careful choice of words in juxtaposition of statements." . . .  When a plaintiff is a public official, the First Amendment adds two elements to the tort that must be established by clear and convincing evidence—the statement must be false and it must be made with actual malice.[2]

*Bertrand v. Mullin*, 846 N.W.2d 884, 892 (Iowa 2014) (internal citations and footnote omitted).    The court must initially examine the "totality of the circumstances in which [the] statements are made" and "decide whether the challenged statement is 'capable of bearing a particular meaning, and whether that meaning is defamatory.'"  *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 769,

---

[2] Malin concedes he is a public official.

771–72 (Iowa 2006) (citation omitted). But the court should not "indulge far-fetched interpretations of the challenged publication. The statements at issue 'should . . . be construed as the average or common mind would naturally understand [them].'" *Id.* at 772 (alterations in original) (citation omitted).

Truth "is an absolute defense" to a defamation claim. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). The substantial truth of a statement entitles a defendant to summary judgment:

> If the underlying facts as to the gist or sting of the defamatory charge are undisputed, the court may determine substantial truth as a matter of law. In that event, the test, for summary judgment purposes, is whether the plaintiff would have been exposed to any more opprobrium had the publication been free of error.

*Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987) (internal citation omitted).

Similarly, opinion is generally protected under the First Amendment. *Kiesau v. Bantz*, 686 N.W.2d 164, 177 (Iowa 2004), *overruled on other grounds by Alcala v. Marriott Int'l*, 880 N.W.2d 699, 708 n.3 (Iowa 2016); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ("Under the First Amendment there is no such thing as a false idea."). More precisely, "statements regarding matters of public concern that are not sufficiently factual to be capable of being proven true or false and statements that cannot reasonably be interpreted as stating actual facts are absolutely protected under the Constitution." *Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 491 (Iowa 2021) (citation omitted). We use a four-factor test to determine whether opinion statements are protected. *See Yates*, 721 N.W.2d at 769–70; *Andrew*, 960 N.W.2d at 491–92 (reaffirming that we continue to use the four-factor test). The first factor considers "the precision and specificity

of the disputed statement." *Yates*, 721 N.W.2d at 770 (citation omitted). The second factor explains "if a statement is precise and easy to verify, it is likely the statement is fact." *Id.* (citation omitted). The third factor considers the "literary context in which the disputed statement [is] made." *Id.* (alteration in original) (citation and internal quotation marks omitted). The final factor focuses on "the social context" meaning "the category of publication, its style of writing and intended audience." *Id.* (citation omitted).

With these concepts in mind, we consider whether the district court correctly denied Malin's partial motion for summary judgment and instead granted judgment in favor of the defendants.

As counsel for the defendants stressed at oral argument, these publications were specifically styled as editorials, not articles—"an important distinction." Review of the publications[3] makes clear they discussed the editorial board's thoughts and concerns on the impact of libel actions against reporters (like Malin's original action) and the potential impact on zealous reporting. The publications also contained some factual statements. It generally explained that Quad-City Times had published reports about Malin's involvement in a casino project in Davenport. That is a factually correct statement—Quad-City Times did make such reports about Malin.[4] And Malin does not dispute the reports played a part in his "departure from office" as stated in the publications.

---

[3] The publications were nearly identical and only differed slightly in title depending on the format viewed by the reader (e.g., online, print, etc.).

[4] Malin complains that the publications describe groundwork for the casino project as "taxpayer-funded" and claims that is not true because bond funding for the casino would be abated through tax increment financing generated by the casino upon its completion. We consider the gist of the publications' statement to be true

Malin takes issue with the publications' reference to his "backroom wheeling and dealing" and references to "corrupt official . . . former St. Louis County Executive Steve Stenger" and "a chief executive of a major tobacco company [who] lied about his knowledge of nicotine's addictiveness." Malin argues that describing him as someone who participates in backroom wheeling and dealing and then discussing persons of ill repute implies he is a dishonest or corrupt person. But considering the references in context, it is apparent that the editorials make no comparison between Malin and Stenger or the tobacco executive. There is no insinuation that Malin and those individuals are of the same ilk. Instead, the editorials discuss the investigative reporting efforts used to uncover Stenger's wrongdoing and legal threats used to kill a story about the tobacco executive's knowledge of nicotine's dangers. This was discussed to highlight the importance of investigative journalism and the dangers of legal efforts to suppress reporting. After all, that was the point of the editorials—to highlight the importance of journalism to the public and stress it should not be suppressed through litigation efforts.

Following our review of the applicable law and the publications, we conclude the district court correctly granted summary judgment to the defendants. Because of that conclusion, it is unnecessary for us to address the defendants' cross-appeal arguing an alternative basis to affirm, so we decline to do so.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**

---

because the casino development was to be funded by bonds that would be repaid by tax revenue.