# IN THE SUPREME COURT OF IOWA

No. 20–0563

Submitted March 24, 2021—Filed April 16, 2021

**RICHARD BAUER,** Individually and as Trustee for the KENDALL R. BAUER TRUST,

      Appellant,

vs.

**BRADLEY R. BRINKMAN,**

      Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

The plaintiff seeks further review of a court of appeals decision affirming the district court's order granting the defendant's motion for summary judgment and dismissing the plaintiff's defamation action. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Harry K. Widdison, Sioux City, for appellant.

Ryland Deinert and Rene Charles Lapierre of Klass Law Firm, L.L.P., Sioux City, for appellee.

**CHRISTENSEN, Chief Justice.**

In this case, the plaintiff, a manager of an apartment building in small-town Sloan, Iowa, brought a defamation action against another Sloan resident arising from his social media post in which he called the plaintiff a slumlord. The plaintiff alleged the defendant asserted a false statement of fact that he is an unscrupulous landlord of a slum area. Both parties filed motions for summary judgment on the issue of liability. The district court granted the defendant's motion and dismissed the action. The district court reasoned that the context of the defendant's statement shows he was not attempting to comment on the plaintiff's apartments, but rather insult the plaintiff. Therefore, it concluded the statement was a constitutionally protected opinion and dismissed the claim. The court of appeals affirmed. The plaintiff applied for further review, and we granted his application.

## I. Background Facts and Proceedings.

Plaintiff Richard Bauer (Bauer) resides in Sloan, Iowa, where he manages Bauer Apartments. The apartments are owned by the Kendall R. Bauer Trust for which he is the trustee. On September 22, 2015, Kathy Lynch (Kathy) began the construction of Pet Perfect LLC, a dog care facility, directly next to Bauer Apartments. Bauer became concerned issues were going to arise from the dogs and their feces due to the outdoor area being constructed. He contacted the Sloan City Council and asked for the city's zoning ordinances. Bauer also contacted Kathy about his concerns and offered to buy the parcel of land where she was building the facility. She refused. He ultimately filed suit against the City of Sloan and the city council members claiming they failed to enforce a zoning ordinance.

Pet Perfect LLC has its own Facebook page that posted about Bauer's pending lawsuit and cameras he had installed on the exterior of the

apartments. On July 5, 2017, Kathy's daughter, Gabbie Lynch, published a post on her personal Facebook page complaining about Bauer and his concerns with the dog feces outside at Pet Perfect LLC. She included in her post a photo of a letter his attorney sent to Kathy. Several people commented on the post, including defendant Bradley Brinkman (Brinkman). Brinkman is a friend of Kathy's. He also lives across the street from Bauer Apartments. Brinkman's Facebook comment states:

> It is because of shit like this that I need to run for mayor! [grinning emoji] Mr. Bauer . . . you sir are a PIECE OF SHIT!!! Let's not sugar coat things here people. Kathy Lynch runs a respectable business in this town! You sir are nothing more than a Slum Lord! Period. I would love to have you walk across the street to the east of your ooh so precious property and discuss this with me!

On March 12, 2019, Bauer filed suit against Brinkman claiming he was liable for defamation due to his use of the term slumlord. He asserted claims for libel per se, libel per quod, and libel by implication. On January 10, 2020, Bauer filed a motion for partial summary judgment seeking judgment as a matter of law on liability and a trial on damages only. Brinkman resisted the motion and filed his own motion for summary judgment arguing that he could not be liable for the use of the term because it was an expression of opinion. The district court held a hearing on the motions.

On March 20, the district court granted Brinkman's motion for summary judgment finding that his use of the term slumlord was not a statement of fact, but rather a constitutionally protected expression of opinion. The district court reasoned that the term slumlord could hypothetically be used as a statement of fact, however, in the context of the Facebook post it was apparent Brinkman was trying to insult Bauer rather than assert facts about the quality of Bauer Apartments. Bauer

appealed. The court of appeals affirmed the district court's order dismissing the action. Bauer applied for further review, and we granted his application.

## II. Standard of Review.

We review a district court's summary judgment ruling for correction of errors at law. *Terry v. Dorothy*, 950 N.W.2d 246, 249 (Iowa 2020). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). Summary judgment "is afforded a unique role in defamation cases. Judges have a responsibility to determine whether allowing a case to go to a jury would . . . endanger first amendment freedoms." *Id.* (omission in original) (quoting *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 889 (Iowa 1989), *overruled in part on other grounds by Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 224 (Iowa 1998)).

## III. Analysis.

The prima facie elements a plaintiff must prove in a defamation action are that "the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Id.* at 464 (quoting *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996)). Generally speaking, defamation is the publication of false statements of fact which tend to harm an individual's reputation. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). "Defamation includes the twin torts of libel and slander. Libel involves written statements, while slander involves oral statements." *Bierman*, 826 N.W.2d at 444 (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004), *overruled in part on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). This case concerns libel. Libel is

the "malicious publication, expressed either in printing or in writing, or by signs or pictures, tending to injure the reputation of another person or to expose [that person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [a] business."

*Delaney v. Int'l Union UAW Loc. No. 94*, 675 N.W.2d 832, 839 (Iowa 2004) (alterations in original) (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)).

Statements that cannot be reasonably interpreted as stating actual facts about a person are not actionable as defamation. *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 2706 (1990). Thus, speech that is considered "rhetorical hyperbole" and "vigorous epithet" are nonactionable as defamation. *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14, 90 S. Ct. 1537, 1542 (1970). Whether a statement is capable of a defamatory meaning is a question for the court. *Jones*, 440 N.W.2d at 891.

We use a four-factor test to determine whether an alleged defamatory statement can reasonably be interpreted as alleging actual facts or is a protected expression of opinion. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018). First, we consider "whether the alleged defamatory statement 'has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous.' " *Id.* (quoting *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 770 (Iowa 2006)). Second, we consider to what degree the statement is "objectively capable of proof or disproof." *Id.* (quoting *Yates*, 721 N.W.2d at 770). Third, we examine "the context in which the alleged defamatory statement occurs." *Id.* (quoting *Yates*, 721 N.W.2d at 770). Fourth, we contemplate "the broader social context" the alleged defamatory statement fits into. *Id.* (quoting *Yates*, 721 N.W.2d at 770).

Bauer argues that Brinkman's speech calling him a slumlord implied a factual assertion that he is an "unscrupulous landlord" of an apartment building that is a slum or in a slum area. He provides the following definition for slumlord:

> [A]n unscrupulous landlord who milks a property without concern for tenants, neighborhoods or their own long term interests. Slumlords overcharge for property in poor neighborhoods that is kept in poor repair and allowed to deteriorate. Some indicators of property run by a slumlord include number of police calls, and city and county code violations on the properties.

*Slumlord Law and Legal Definition*, US Legal, https://definitions.uslegal.com/s/slumlord [https://perma.cc/UZG9-RR8T] (last visited April 9, 2021). The Iowa Code defines a slum area as:

> [A]n area in which there is a predominance of buildings or improvements, whether residential or nonresidential, which: by reason of dilapidation, deterioration, age or obsolescence; by reason of inadequate provision for ventilation, light, air, sanitation, or open spaces; by reason of high density of population and overcrowding; by reason of the existence of conditions which endanger life or property by fire and other causes; or which by any combination of such factors, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and which is detrimental to the public health, safety, morals, or welfare.

Iowa Code § 403.17(22) (2019). Brinkman argues that his Facebook comment was a protected expression of opinion. The dispositive question in this case is whether a reasonable reader could conclude that Brinkman's Facebook comment implied a factual statement that Bauer is a rental property owner or landlord of a slum area.

A statement that is precise and easy to verify is more likely a fact than an opinion. *Jones*, 440 N.W.2d at 891. An example of a defamatory statement that is capable of precise meaning and easily verifiable is an accusation that a person committed a crime. *Yates*, 721 N.W.2d at 773;

*see also Milkovich*, 497 U.S. at 21, 110 S. Ct. at 2707 (finding whether plaintiff committed perjury could be objectively verified by comparing his two sets of differing testimony on a topic). We have held that an alleged defamatory statement that a plaintiff reads at a third-grade level is a precise and specific statement, which could be verified. *Jones*, 440 N.W.2d at 892. On the other hand, we have determined that a statement that a greyhound racing dog kennel was "substandard and poor performers" is not capable of a precise and verifiable meaning. *Yates*, 721 N.W.2d at 773. We have also held that a defendant's statement that, "unless . . . he was holding a knife to her throat, it wasn't rape" was an opinion, partly because there is a lack of consensus of understanding on whether rape exists without a threat of force. *Bandstra*, 913 N.W.2d at 48–49.

In certain contexts, courts likely could assign a precise meaning to the term slumlord. For example, in *Ramunno v. Cawley*, 705 A.2d 1029, 1032 (Del. 1998) (en banc), the Delaware Supreme Court examined the use of the term slumlord in a newspaper article headline in conjunction with the article's contents. The article stated that the plaintiff owned seventy properties and reprinted allegations that he had "done well through poorly-maintained surface parking lots and rental homes." *Id.* The article included a claim that some of the rental homes were poorly maintained row houses occupied by tenants. *Id.* The article's author omitted the plaintiff's assertions that only five of the seventy properties were houses and just one house was occupied by a tenant. *Id.* at 1033. Thus, in *Ramunno* it is possible to assign a precise meaning to the term slumlord as used in the article because it was supported by fact-specific statements. *See id.* at 1038 (determining that the alleged defamatory statements could reasonably be understood as implying the plaintiff owned a sizable amount of substandard rental housing).

However, a term is not automatically categorized as an assertion of fact because it is capable of precise meaning and verification when read in isolation. The context surrounding the use of a term must be considered to determine whether it is protected as rhetorical hyperbole. *See Knievel v. ESPN*, 393 F.3d 1068, 1071, 1074 (9th. Cir. 2005) (determining use of term "pimp" in the context of a webpage containing pictures and captions of athletes at award events was not capable of precise meaning); *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 188 (3d. Cir. 1999) (finding statement that "you people at Beverly are all criminals" was a mere insult); *Rasky v. Columbia Broad. Sys., Inc.*, 431 N.E.2d 1055, 1059 (Ill. App. Ct. 1981) (determining use of term "slumlord" in a news telecast was capable of an innocent construction). For example, Brinkman additionally called Bauer a "piece of shit" in the Facebook comment. While the phrase is certainly capable of precise meaning and objective verification, it is obvious it was meant only as name-calling and an insult.

In *Greenbelt Cooperative Publishing Association v. Bresler*, the United States Supreme Court examined whether two newspaper articles' use of the term "blackmail" to describe a real estate developer's negotiating position was actionable as defamation. 398 U.S. at 8, 90 S. Ct. at 1538. The real estate developer argued that speakers at a public meeting and the newspaper articles charged him with the crime of blackmail, and could be held liable since they knew he had not committed the crime. *Id.* at 13, 90 S. Ct. at 1541. The Court disagreed, determining that no reader of the speech could have reasonably thought Besler was being charged with the criminal offense of blackmail. *Id.* at 14, 90 S. Ct. at 1542. The court noted that the term was used during a heated debate, and "even the most careless reader must have perceived that the word was no more than

rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable." *Id.*

When determining whether a statement can reasonably be understood as a factual assertion we view it "in the context of the surrounding circumstances and within the entire communication." *Bandstra*, 913 N.W.2d at 47 (quoting *Huegerich*, 547 N.W.2d at 221). The proper inquiry "is not the literal wording of the statement but what a reasonable reader or listener would have understood the author to have said." *Yates*, 721 N.W.2d at 771. Therefore we must examine the broader social context the statement was made in, as well as the context of Brinkman's specific Facebook comment.

Today, the "most important place[] . . . for the exchange views" is cyberspace, especially social media. *Packingham v. North Carolina*, 582 U.S. ___, ___, 137 S. Ct. 1730, 1735–37 (2017) (deeming social media the "modern public square"). Social media sites like Facebook give users a low-cost and easy way to voice their views. *Id.* at ___, 137 S. Ct. at 1735. However, users must be aware that they could potentially be liable for their online speech. A statement's publication on social media does not automatically categorize it as a protected opinion and bar the author from liability for defamation. *See Brian v. Richardson*, 660 N.E.2d 1126, 1130 (N.Y. 1995) (emphasizing that an article's publication in the opinion section of a newspaper does not automatically preclude liability for defamation). Many people rely on social media as a source of factual information. In 2020 fifty-three percent of U.S. adults reported getting news from social media "often" or "sometimes." Elisa Shearer & Amy Mitchell, Pew Resch. Ctr., *News Use Across Social Media Platforms in 2020* 4, 5 (2021) https://www.journalism.org/wp-content/uploads/sites/8/2021/01/PJ_2021.01.12_News-and-Social-Media_FINAL.pdf [https://

perma.cc/8445-ZVHC] (stating Facebook was reported as the top news source out of eleven social media sites).

Here, the context of the speech begins with a Facebook post by Gabbie Lynch on her personal page. The post criticized Bauer for expressing concerns about dog feces outside at Pet Perfect LLC. Several people commented on her post expressing their own opinions about Bauer. Bauer concedes in his briefing that none of the comments on the thread discussed the condition of the apartments or his managerial abilities. It would be more reasonable for a reader to understand Brinkman's use of "slumlord" as a serious factual assertion if the Facebook thread related specifically to Bauer's occupation and Bauer Apartments. However, the Facebook post and comments were individual's emotionally charged responses to how they perceived Bauer's actions in relation to Kathy's business. As an example of the tone of the comments on the thread, the comment directly above Brinkman's states, "Dear Mr. Bauer" followed by a photo with enlarged text stating, "Good morning. Don't forget to drink your water and mind your own fucking business." This context of an ongoing heated discussion on matters separate from Bauer's role as a rental property manager lends support to the conclusion that Brinkman's speech was name-calling and an insult rather than an assertion of fact. *See Greenbelt*, 398 U.S. at 13–14, 90 S. Ct. at 1541–42 (noting context of a heated public debate showed statement was rhetorical hyperbole rather than factual); *Feld v. Conway*, 16 F. Supp. 3d 1, 4 (D. Mass. 2014) (determining that a tweet calling the plaintiff crazy was a protected opinion when viewed in the context of an ongoing heated debate on the internet about the disappearance of the plaintiff's horse).

An examination of the specific context of Brinkman's Facebook comment additionally shows his statements were rhetorical hyperbole

rather than assertions of facts. He states "It is because of shit like this that I need to run for mayor!" followed by a grinning emoji, and that Bauer is a "PIECE OF SHIT!!!" before calling him a slumlord. The tone "is pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage" thus alerting readers that the statements are expressions of personal judgment. *Milkovich*, 497 U.S. at 32, 110 S. Ct. at 2712 (Brennan, J., dissenting); *see also Wahrendorf v. City of Oswego*, 899 N.Y.S. 502, 503–04 (App. Div. 2010) (determining statements made on the internet that the plaintiffs were slumlords and sociopaths and their property was a garbage heap and pigpen was name-calling and general insults because the tone was intended to be humorous and sarcastic).

Furthermore, Brinkman did not attempt to provide any support for the statement that Bauer is a slumlord; therefore, a reader is alerted it is an insult and a "single, excited reference" rather than a factual assertion. *See Clifford v. Trump*, 339 F. Supp. 3d 915, 926–28 (C.D. Cal. 2018) (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002)) (determining tweet calling plaintiff a "total con job" was rhetorical hyperbole in part because it provided no support for the statement). Brinkman's deposition testimony that Bauer is not actually a slumlord also lends support to the conclusion that his Facebook comment was rhetorical hyperbole and an insult rather than a factual assertion. If he had insisted it was true, that would tend to show he saw his Facebook comment as factual. *See id.* (noting defendant did not repeat the alleged defamatory statement or make a sustained attack on plaintiff); *Bentley*, 94 S.W.3d at 584 (finding that defendant's "consistent position at trial that his accusations of corruption were true is a compelling indication that he himself regarded his statements as factual and not mere opinion").

Therefore, we conclude that based on the context of Brinkman's speech any reasonable reader would understand that the use of the term slumlord was only rhetorical hyperbole and name-calling.  The record is devoid of any evidence that anyone thought Brinkman asserted a factual statement about Bauer as a landlord or Bauer Apartments.  *See Greenbelt*, 398 U.S. at 14, 90 S. Ct. at 1542 (noting there was no evidence anyone thought the alleged defamatory statement was a factual assertion).

**IV.  Conclusion.**

For these reasons we affirm the district court's order granting Brinkman's motion for summary judgment.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**